assignment was vacated by the bankruptcy proceedings, the goods came to the bankrupt assignee free from any lien or charge. The case is essentially different from one where the general property in the goods remains in the debtor, where an execution is levied upon that interest, and the goods come into bankruptcy charged with that lien.

Upon the whole case I am of the opinion that an order should be entered directing the assignee in bankruptcy to pay to the petitioners the amount of their claim proved against the bankrupt's estate, and it is ordered accordingly.

## Case No. 6,858.

### HULL OF A NEW BRIG.

[The case reported under above title, in 3 Law Rep. 69, and 23 Am. Jur. 453, is the same as Case No. 2,316.]

HULL OF A NEW BRIG (READ v.). See Case No. 11,609.

## Case No. 6,859.

### The HULL OF A NEW SHIP.

[2 Ware (Dav. 199) 203.] [1]

District Court, D. Maine. Sept. Term, 1842.

ADMIRALTY JURISDICTION — MECHANIC'S LIEN — PARTIES TO SUIT — HYPOTHECATION OF AFTER-ACQUIRED PROPERTY—PRIORITY OF LIENS—SUBROGATION — ASSIGNMENT OF CLAIM — SPLITTING OF CLAIM.

1. When the local law gives a lien to material-men and mechanics, for their demands against a ship, it may be enforced in the admiralty.

[Cited in The Richard Busteed, Case No. 11,764; The Kate Tremaine, Id. 7,622.]

2. All the privileged creditors may unite in one libel, or if a libel has been filed by any one separately, then others may come in by petition and make themselves parties to the suit.

[Cited in The Prinz Georg, 19 Fed. 654.]

3. A valid contract of hypothecation may be made not only of things which the party has at the time of the contract, but of what he expects to have, and of things not then in existence. It will attach to, and find, the party's interest in the thing as soon as it comes into being.

4. A ship-builder, before he commenced building a vessel, entered into a contract with a merchant by which he hypothecated the vessel to be built for advances. This was held to be a valid hypothecation of the builder's interest in the vessel, and to give a lien upon it.

5. By a statute of Maine, material-men and mechanics have a lien on vessels for materials and labor employed in making it, which has precedence over the claims of all other creditors. The lien created by the contract of hypothecation was postponed to those of the material-men and laborers.

[Cited in The Hiawatha, Case No. 6,453.]

6. Nor was the hypothecary creditor subrogated to their privilege, merely by paying their claims on orders drawn by the builder.

7. But when he actually furnished materials, he was allowed to claim concurrently with them.

1 [Reported by Edward H. Daveis, Esq.]

8. When a creditor transfers his debt, the assignment of the debt carries with it all the accessory obligations, as pawns, hypothecations, or sureties, by which the debt is secured.

[Cited in The Sarah J. Weed, Case No. 12,350; Hooper v. Robinson, 98 U. S. 538. Approved in The New Idea, 60 Fed. 294.]

9. But where a creditor has a debt due him on a single contract or obligation, he cannot divide it by assigning part to one and part to another so as to enable each assignee to maintain a separate action without the assent of the debtor.

This was a libel by Richard Abbott, a carpenter, against the hull of a new ship, for work and labor performed by him in building her. She was launched March 31, 1842, and the libel was filed the next day, April 1. He claimed a privileged lien on the vessel for his pay, under a law of the state which provides, that "any ship-carpenter, calker, blacksmith, joiner, or other person, who shall perform labor or furnish materials, for, or on account of any vessel, building or standing on the stocks, or under repairs after having been launched, shall have a lien on such vessel for his wages and materials until four days after such vessel is launched, or such repairs have been completed" (Rev. St. Me. c. 125, § 35), and giving them a priority and precedence over all other creditors of the owner. After the vessel was arrested on this libel, a large number of other creditors, amounting to thirty-one in all, intervened by petition, claiming to have similar demands and praying to have their liens allowed, and to be paid out of the proceeds of the ship.

The libel and all the petitions were committed to S. Longfellow, Esq., a master in chancery, to examine into the several claims set forth, and to report to the court: First. What sum is justly due to each of said libellants and petitioners for labor performed and materials furnished for and on account of said ship. Second. Where any of the parties have furnished materials for or on account of said ship, and the whole of the same have not been used in the building of the vessel, to distinguish and report: (1) Such as have been used, from such as have not been used. (2) What part of the materials not used were furnished by the material-men, under a just belief and expectation that they were wanted for the vessel and intended to be used in the construction of the same. Third. To report what sums, if any, are claimed as liens on the vessel for money paid to the workmen for labor in satisfaction of their wages, or to material-men for materials furnished, and at whose request they were paid.

The vessel was sold on an interlocutory order for $13,000, and the proceeds paid into the registry. The master reported a large number of debts due to laborers and material-men about which there was no controversy. With respect to two large debts, which were claimed as chargeable on the vessel in concurrence with those of the ma-